IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                          No. CR 21-1910 JB

DARYL LEVI,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant Daryl Levi's Objections to the Presentence Report, filed September 27, 2024 (Doc. 80)("Objections").  Sentencing in this matter will take place on October 15, 2024.  See Notice of Sentencing, filed July 17, 2024 (Doc. 77).  The primary issues are: (i) whether the Court should overrule Levi's Objections regarding the United States Probation Office's Presentence Investigation Report ¶¶ 11-14, 16-18 at 4-6, filed September 13, 2024 (Doc. 78)("PSR"),  because the Plaintiff United States of America has shown -- by a preponderance of the evidence -- that Levi struck John Doe with a razor blade; and (ii) whether the PSR correctly applies a 5-level enhancement under § 2A2.2(b)(3)(B) for sustaining a serious bodily injury because the United States has shown -- by a preponderance of the evidence -- that Levi inflicted a serious bodily injury on Doe where, four days after the assault, Doe described his pain as a ten out of ten, and, for six months following the assault, Doe required supplemental oxygen.  Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court concludes that: (i) the United States has shown -- by a preponderance of the evidence -- that Levi struck Doe with a razor blade, because both Levi and Doe identify Levi as wearing a white shirt, and Doe says that the man in a white shirt struck him with a razor blade; (ii) in the alternative,

Levi is accountable for his co-defendant's actions that are within the scope of their jointly undertaken criminal activity, in furtherance of that activity, and reasonably foreseeable in connection with that activity; and (iii) the PSR correctly applies a 5-level enhancement under § 2A2.2(b)(3)(B), because Doe's bodily injuries are serious, as the Sentencing Guidelines contemplate.  The Court thus overrules Levi's Objections.

## FACTUAL BACKGROUND

Chavez does not object to the PSR's facts outside of paragraphs 11-14 and 16-18, and the Court thus concludes that those undisputed facts are findings of fact.  See Objections at 2-4.  See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").  On May 17, 2020, Defendant Daryl Levi, herein D. Levi, and Brian Levi, herein B. Levi, assault John Doe, and steal his car near The Bamboo House parking lot in Shiprock, New Mexico.  See PSR ¶ 10-12, at 4.  D. Levi admits that he participated in this assault and carjacking:

> On or about May 17, 2020, I intentionally assaulted John Doe with strikes resulting in wounds.  I did not act alone in this assault.  This occurred in Shiprock, New Mexico within the exterior boundaries of the Navajo Nation.  This is Indian Country for purposes of federal law.  I participated in the assault with the intent to take John Doe's motor vehicle.

Plea Agreement ¶ 10, at 4, filed July 16, 2024 (Doc. 75)("Plea Agreement").  According to Doe, the Levi brothers exited a red vehicle with a female driver, and the two men approached Doe while yelling, "are you following me."  PSR ¶ 11, at 4.  B. Levi got into the passenger side of his vehicle and grabbed Doe by the neck while Doe was driving.  See PSR ¶ 13, at 4.  Doe says that Doe and B. Levi, wearing black clothing, then start fighting, and Doe eventually stops the vehicle.  See PSR ¶ 13, at 4.  Doe also says that D. Levi, wearing a white shirt, then starts punching Doe through the driver's side window and cuts Doe with a yellow razor blade after Doe tries unsuccessfully to knock the razor blade out of his hand with a baton.  See PSR ¶ 12, 13, at 5.  On May 21, 2020,

Doe tells the Navajo Department of Criminal Investigations that his pain level is a level "ten" and that he felt "dizzy" from the head injuries sustained during his assault. PSR ¶ 14, at 5.

When he is arrested, D. Levi admits to the carjacking and tells authorities that, although he "had a little blade" on him during the assault, he "didn't pull it out." PSR ¶ 17, at 5. In this interview, D. Levi is unsure whether he hit Doe, stating both, "I don't think I hit him or anything, I might of," and "I might of swung at him two or three times." PSR ¶ 17, at 5. D. Levi also tells authorities that his brother, B. Levi, is the one who had the yellow razor blade on him during the assault. See PSR ¶ 17, at 5.

## PROCEDURAL BACKGROUND

On September 9, 2024, the United States Probation Office ("USPO") filed the PSR that applies a 4-level enhancement under § 2A2.2(b)(2)(B) for using a dangerous weapon and a 5-level enhancement under § 2A2.2(b)(3)(B) for inflicting serious bodily injury. See PSR ¶¶ 31-32, at 7. On September 27, 2024, D. Levi filed the Objections to the PSR, which contend that: (i) D. Levi did not strike Doe with a razor blade, and (ii) Doe's injuries are not serious enough to warrant a 5-level enhancement under § 2A2.2(b)(3)(B). See Objection at 2-5. D. Levi contends that Doe names both D. Levi and B. Levi as "the person who cut him with the yellow-handled razor blade," and that D Levi "indicates Brian had the yellow razor blade on his person." Objections at 3. D. Levi "disputes ever using a weapon," or uttering or hearing several statements that Doe describes, including the Levi brothers' alleged threat to run Doe over and kill him. Objections at 3. See PSR ¶ 12, at 4. D. Levi also disputes that he and his brother exited a vehicle with a female driver or approached Doe at the same time. See Objections at 3. D. Levi also notes that Doe "has a criminal history that includes allegations of fraud, failures to appear, alcohol-related offenses, and sex crimes." Objections at 3. In sum, D. Levi argues that Doe is unreliable and that the United States has not proven -- by a preponderance of evidence -- that D. Levi struck Doe with a razor

blade.  Although D. Levi "assume[es] arguendo that the guidelines would allocate" the dangerous weapon enhancement "regardless of whether he or his brother wielded the weapon here," D Levi asserts that his alleged "non-use of a weapon, and his brother's initiation of the attack in which he regrettably joined later, are mitigating facts that should impact this Court's sentencing decision despite his admitted participation in the assault on John Doe."  Objections at 4.  Regarding Doe's injuries, D. Levi asserts that "the defense has not received any additional medical reports beyond John Doe's immediate treatment and release on the date of the offense," which indicate that Doe had a "six-centimeter laceration repaired by seven sutures with no further complications."  Objections at 4-5.  D. Levi contends that, based on these records, "there is insufficient information to support the five-level offense level increase for serious bodily injury."  Objections at 4.

On October 11, 2024, the USPO filed an Addendum to the Presentence Report, (Doc. 124)("Addendum"), which concludes that: (i) D. Levi struck Doe with a razor blade; and (ii) Doe's injuries were serious enough to warrant a 5-level enhancement under § 2A2.2(b)(3)(B).  See Addendum at 1-2.  Regarding which Levi brother struck Doe with a razor blade, the United States notes that

> the defendant [B. Levi] self-identifies himself as the one wearing a white sweatshirt. The self-identification is important because it tracks the victim's description of two men assaulting him, one in a black shirt the other in a white shirt. In the Victim's Interview on May 17, 2020, the defendant was described as the one in the white shirt, coming up to the victim with a razor blade and using it against the victim.

Addendum at 2.  Regarding Doe's injuries, the USPO notes:

> According to John Doe's spouse, after the offense, John Doe required oxygen for six months. He experiences eye twitching in his left eye and has a difficult time remembering things. Pursuant to USSG § 1B1.1 Application Note (M) "Serious Bodily Injury" means injury involving extreme physical pain, which in this case, the victim described his pain as extreme -- a ten out of ten, even four days after the assault due to the defendant grabbing him by the neck, striking him in the face, and stabbing him on the left temple area of his face with a razor blade. Per the

defendant's admission of facts in the plea agreement, the defendant intentionally assaulted John Doe with strikes resulting in wounds.

Addendum at 2.

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1). A PSR must apply the advisory sentencing Guideline, meaning that it must:

> identify all applicable guidelines and policy statements of the Sentencing Commission;
>
> calculate the defendant's offense level and criminal history category;
>
> state the resulting sentencing range and kinds of sentences available;
>
> identify any factor relevant to:
>
>> (i) the appropriate kind of sentence, or
>>
>> (ii) the appropriate sentence within the applicable sentencing range; and
>
> identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1). A presentence report also must provide additional information, including:

> (A) the defendant's history and characteristics, including:
>
>> (i) any prior criminal record;
>>
>> (ii) the defendant's financial condition; and
>>
>> (iii) any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;
>
> (B) information that assesses any financial, social, psychological, and medical impact on any victim;
>
> (C) when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

    (D)    when the law provides for restitution, information sufficient for a restitution order;

    (E)    if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

    (F)    a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

    (G)    any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report. See Fed. R. Crim. P. 32(f). Parties must make their objections in writing within fourteen days of receiving the PSR. See Fed. R. Crim. P. 32(f)(1). Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). For example, a party can object to a PSR's statement of facts. See, e.g., United States v. Garcia, No. CR 20-1370 KWR, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries). If a party raises a factual objection, it must present "information to cast doubt on" the PSR's recitation of the facts. See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994). A party also can object that the USPO miscalculates a defendant's criminal history category. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history score by several points). Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21,

2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently. If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court. If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter

will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). When resolving factual objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008). Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the Court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[1] See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.). The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing." United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautions, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborates on its holding

---

[1]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(first citing Ring v. Arizona, 536 U.S. 584, 602 (2002); and then citing Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2012)). In United States v. Booker, however, the Supreme Court holds that, because the sentencing guideline ranges are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. at 259). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of Apprendi's requirement." (quoting United States v. Booker, 543 U.S. at 221)(second alteration added by United States v. Booker)). More recently, the Supreme Court holds that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that Blakely v. Washington and United States v. Booker do not change the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involves plain-error review of a drug sentence in which a jury finds the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine. See United States v. Magallanez, 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses'

in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(first citing Ring v. Arizona, 536 U.S. 584, 602 (2002); and then citing Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2012)). In United States v. Booker, however, the Supreme Court holds that, because the sentencing guideline ranges are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. at 259). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of Apprendi's requirement." (quoting United States v. Booker, 543 U.S. at 221)(second alteration added by United States v. Booker)). More recently, the Supreme Court holds that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that Blakely v. Washington and United States v. Booker do not change the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involves plain-error review of a drug sentence in which a jury finds the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine. See United States v. Magallanez, 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses'

testimony of the various amounts that they had sold to the defendant -- attributes 1,200 grams of methamphetamine to the defendant and uses that amount to calculate his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increase the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit states that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker makes the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate

---

[2]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases his or her sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that

---

standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms). Subsequent to United States v. Washington, the Tenth Circuit reiterates the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[3] The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States . . . expands the rule from Apprendi v. New Jersey, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315. The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt." United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting Alleyne v. United States, 570 U.S. at 112-14). Further, the Tenth Circuit has determined that a district court can use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity

---

[3]United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished). The Court concludes that United States v. Hendrickson and United States v. Ayon, 226 F. App'x 834, 840 (10th Cir. 2007) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

finding to alter the defendant's <u>statutory</u> sentencing range." <u>United States v. Cassius</u>, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

## ANALYSIS

The Court overrules Levi's Objections, because the United States has shown -- by a preponderance of the evidence -- that he struck Doe with a razor blade and that Doe suffered serious injuries following the Levi brothers' assault. "[S]entencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability." <u>United States v. Dazey</u>, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005). "This is not a high standard, for it requires only 'minimal indicia of reliability.'" <u>United States v. Ayon</u>, 226 F. App'x 834, 840 (10th Cir. 2007) (quoting <u>United States v. Fennell</u>, 65 F.3d 812, 813 (10th Cir. 1995)). Doe tells authorities that a man in a white shirt struck him with a razor blade, and D. Levi admits to wearing a white shirt at the time of the assault. <u>See</u> Addendum at 1-2. D. Levi's assertion, which he makes along with several other vague and conflicting statements, that his brother was the one with the razor blade, <u>see</u> PSR ¶ 17, at 5, does not undermine Doe's recollection such that the United States fails to meet its evidentiary burden at the sentencing stage, <u>see</u> <u>United States v. Ayon</u>, 226 F. App'x at 840-41 (concluding that a witness' out-of-court statement to a police officer regarding whether a defendant initiated a gunfight "possessed sufficient indicia of reliability" where it "roughly matched" what another witness "heard several blocks away" even though the two statements "do not correspond perfectly"). Even if D. Levi's Objections cast sufficient doubt on the USPO's attribution of the razor blade attack, however, D. Levi would be accountable for his brother's use of a razor blade. <u>See</u> Objections at 4. D. Levi is accountable for B. Levi's actions that are (i) within the scope of their jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity. <u>See</u>

U.S.S.G. § 1B1.3(a)(1)(B). D. Levi admits that he assaulted Doe to steal his car. See Plea Agreement ¶ 10, at 4. Wounding Doe with a razor blade is within the scope of the violent carjacking, in furtherance of it, and reasonably foreseeable in connection with it. See United States v. Ramirez, No. CR 18-03890 JB, 2024 WL 4203343, at *2-3 (D.N.M. Sept. 16, 2024)(Browning, J.)(applying a 6-level § 2A4.1(b)(1) enhancement for making a ransom demand regardless of which co-defendant made the demand, because it "is reasonably foreseeable that, to further a kidnapping's goals, a co-conspirator will demand a ransom"); United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *15 (D.N.M. July 16, 2020)(Browning, J.)(applying 4-level enhancement where, "[i]n an enterprise that involved controlling and using women's bodies, it was reasonably foreseeable that" a co-defendant "would assault women he was forcing to do sex work to ensure their subservience"); United States v. Benally, No. CR 14-3430 JB, 2015 WL 7814678, at *1, *8 (D.N.M. Nov. 20, 2015)(Browning, J.)(applying the § 2A2.2(b)(2)(B) dangerous weapon enhancement "to a defendant who d[id] not use the weapon that his or her co-Defendant use[d] to commit an assault" where it was "reasonably foreseeable" to the defendant "that his co-Defendants might use the weapon in the assault"); U.S.S.G. § 1B1.3 n.3(D)(a defendant is accountable for his co-defendant's actions if they are "reasonably foreseeable in connection with that criminal activity (given the nature of the offense)")(emphasis added).

Regarding the seriousness of Doe's injuries, the Court concludes that the United States has shown -- by a preponderance of the evidence -- that Doe's injuries are serious enough to warrant a 5-level § 2A2.2(b)(3)(B) enhancement. The Commentary provides:

> (K)   "**Permanent or life-threatening bodily injury**" means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent. In the case of a kidnapping, for example, maltreatment to a life-threatening degree (e.g., by

denial of food or medical care) would constitute life-threatening bodily injury.

U.S.S.G. § 1B1.1 n.1(K). Doe suffered trauma to his left temple and a six-centimeter laceration, and, four days after the assault, Doe "described his pain as extreme -- a ten out of ten." Addendum at 2. Doe's spouse says that he required supplemental oxygen for six months following the assault. See Addendum at 2. These injuries are sufficiently serious to warrant the 5-level § 2A2.2(b)(3)(B) enhancement. See United States v. Antonio, No. CR 15-0776 JB, 2015 WL 5138479, at *3 (D.N.M. Aug. 21, 2015)(Browning, J.)(applying a 5-level § 2A2.2(b)(3)(B) serious bodily injury enhancement where, although defendant did not fracture any of the victim's bones when she kicked him with her bare feet in the head and neck, the victim reports a nine out of ten pain level five days after the assault and, four months after the assault, the victim suffers pain from turning his neck too quickly and is unable to perform strenuous activities).

**IT IS ORDERED** that: (i) the Defendant Daryl Levi's Objections to the Presentence Report, filed September 27, 2024 (Doc. 80), are overruled; (ii) the 5-level § 2A2.2(b)(3)(B) enhancement applies; (iii) the applicable offense level is 20; (iv) the applicable criminal history category is IV; and (v) the United States Sentencing Guidelines establish an imprisonment range of 51 to 63 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
  United States Attorney
Mark A. Probasco
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Harry Zimmerman
Harry Ira Zimmerman Attorney At Law
Albuquerque, New Mexico

    *Attorney for Defendant*