IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                 No. CR 22-1910 JB

DARYL LEVI,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Defendant's Oral Objections to the Presentence Report, made on November 15, 2024 ("Restitution Objections"). The Court held a sentencing hearing on October 15, 2024, see Clerk's Minutes at 1, filed October 15, 2024 (Doc. 91)("Sentencing Hearing Minutes"), and held restitution hearings on November 15, 2024, and December 2, 2024, see Clerk's Minutes at 1, filed November 15, 2024 (Doc. 94)("First Restitution Hearing Minutes"); Clerk's Minutes at 1, filed December 2, 2024 (Doc. 96)("Second Restitution Hearing Minutes"). The primary issue is whether the Court should overrule Defendant Daryl Levi's Restitution Objections regarding whether the United States has shown -- by a preponderance of the evidence -- that the $5,905.19 restitution calculation in the Second Addendum to the Presentence Report, filed November 8, 2024 (Doc. 92)("Second PSR Addendum"), is correct. The Court concludes: (i) $198.88 in restitution to Utah Navajo Health Systems, Inc., who paid for victim John Doe's one-night hotel stay to attend the October 15, 2024, sentencing hearing, and $311.28 in restitution to Doe for gas mileage from his trip to Albuquerque to attend the October 15, 2024, sentencing hearing is appropriate, because Doe does not object to these costs, which the United States has shown -- by a preponderance of the evidence -- are

substantiated, and D. Levi's criminal conduct proximately caused this loss; (ii) restitution to Doe for traditional Navajo healing services is not appropriate, because the United States has not shown -- by a preponderance of the evidence -- that Doe's healer was qualified to administer those services; (iii) $2,289.75 in restitution to Doe for car repairs is appropriate, because the United States has shown -- by a preponderance of the evidence -- that D. Levi's criminal conduct caused enough damage to Doe's car to warrant those repairs; and (iv) only $463.82 in restitution to Doe for replacement of tires and rims is appropriate, because the United States has shown -- by a preponderance of the evidence -- that D. Levi's criminal conduct proximately caused damage to only one set of Doe's tires and rims. Accordingly, the Court sustains in part and overrules in part the Restitution Objections, and orders restitution in the amount of $198.88 to Utah Navajo Health Systems, and $3,064.85 to Doe.

## FACTUAL BACKGROUND

On May 17, 2020, Defendant D. Levi, and his brother, Brian Levi, assault Doe, and steal his car near The Bamboo House parking lot in Shiprock, New Mexico. See Presentence Investigation Report ¶ 10-12, at 4, filed September 13, 2024 (Doc. 78)("PSR"). D. Levi admits that he participated in this assault and carjacking:

> On or about May 17, 2020, I intentionally assaulted John Doe with strikes resulting in wounds. I did not act alone in this assault. This occurred in Shiprock, New Mexico within the exterior boundaries of the Navajo Nation. This is Indian Country for purposes of federal law. I participated in the assault with the intent to take John Doe's motor vehicle.

Plea Agreement ¶ 10, at 4, filed July 16, 2024 (Doc. 75)("Plea Agreement"). According to Doe, the Levi brothers exited a red vehicle with a female driver, and the two men approached Doe while yelling: "[A]re you following me[?]" PSR ¶ 11, at 4. B. Levi got into the passenger side of his vehicle and grabbed Doe by the neck while Doe was driving. See PSR ¶ 13, at 4. Doe says that Doe and B. Levi, wearing black clothing, then start fighting, and Doe eventually stops the vehicle.

See PSR ¶ 13, at 4.  Doe also says that D. Levi, wearing a white shirt, then starts punching Doe through the driver's side window and cuts Doe with a yellow razor blade after Doe tries unsuccessfully to knock the razor blade out of D. Levi's hand with a baton.  See PSR ¶ 12, 13, at 5.

During the carjacking, a witness tells a nearby police officer, Sergeant Samuel Sloan, about the incident, and Sloan arrives at the scene.  See Incident Report by Dean Goldtooth, Criminal Investigator at 3 (admitted as United States Restitution Hearing Exhibit 1 on December 2, 2024), filed December 2, 2024 (Doc. 96-1)("Incident Report").  Sloan sees a man enter Doe's car on the passenger side, and watches the car take off, travelling westbound.  See Incident Report at 3.  Sloan pursues the vehicle, which "traveled at a high rate of speed and pulled into oncoming traffic." Incident Report at 3.  After observing the vehicle "nearly collide[] with an oncoming vehicle," Sloan abandons the chase and returns to the carjacking site.  Incident Report at 3.  Later, after receiving a report indicating that Doe's stolen vehicle is nearby, Sloan and Officer Jeffrey Simms find the vehicle turned off a dirt road with its hood open and a man standing next to it.  See Incident Report at 3-4.  As Sloan and Simms approach, the man rushes to close the hood and drives away. See Incident Report at 4.  Sloan and Simms then pursue the vehicle again, and they eventually apprehend D. Levi, who abandons the vehicle and flees from the vehicle on foot.  See Incident Report at 4.  Officers observe that the abandoned vehicle, which is found approximately twenty-five miles away from the carjacking site, has two broken taillights and one flat tire that is off the rim.  See Incident Report at 4.  Officers also take photographs of the outside and inside of the vehicle at this time.  See Incident Report at 4; Vehicle Photograph 1 (dated May 17, 2020)(admitted as United States Restitution Hearing Exhibit 2 on December 2, 2024), filed December 2, 2024 (Doc. 96-1)("Vehicle Photograph 1"); Vehicle Photograph 2 (dated May 17, 2020)(admitted as

United States Restitution Hearing Exhibit 3 on December 2, 2024), filed December 2, 2024 (Doc. 96-1)("Vehicle Photograph 2"); Vehicle Photograph 3 (dated May 17, 2020)(admitted as United States Restitution Hearing Exhibit 4 on December 2, 2024), filed December 2, 2024 (Doc. 96-1)("Vehicle Photograph 3"); Vehicle Photograph 4 (dated May 17, 2020)(admitted as United States Restitution Hearing Exhibit 5 on December 2, 2024), filed December 2, 2024 (Doc. 96-1)("Vehicle Photograph 4").

On May 21, 2020, Doe tells the Navajo Department of Criminal Investigations that his pain level is a level "ten" and that he feels "dizzy" from the head injuries sustained during his assault. PSR ¶ 14, at 5. According to Doe's spouse, Doe "would randomly collapse at the dinner table and needed to use oxygen approximately six months after the instant offense." PSR ¶ 22, at 6. Doe's spouse also says that, for approximately one year following the assault, Doe had nightmares. See PSR ¶ 23, at 6. Doe also "experiences eye twitching in his left eye and has a difficult time remembering things since the underlying offense occurred." PSR ¶ 22, at 6.

## PROCEDURAL BACKGROUND

On October 15, 2024, the Court sentences D. Levi to 46 months of imprisonment and three years of supervised release. See Sentencing Hearing Minutes at 1. At the October 15, 2024, sentencing hearing, the Court also determines that the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A ("MVRA"), applies to D. Levi's case, and indicates that "the Court will establish a restitution amount at a Restitution Hearing scheduled for Nov. 14, 2024." Sentencing Hearing Minutes at 2. On November 8, 2024, the United States Probation Office ("USPO") files the Second PSR Addendum, which outlines four losses for which Doe requests restitution: (i) $311.28 for gas mileage from Doe's trip to Albuquerque to attend the October 15, 2024, sentencing hearing; (ii) $1,250.00 for "[t]raditional healing ceremonies"; (iii) $2,289.75 for "Auto Repairs -- Highway 64 Truck & Auto"; and (iv) $1,855.28 for "Auto Repairs -- Treadworks."

Second PSR Addendum at 1.  The Second PSR Addendum also requests $198.88 in restitution for Utah Navajo Health Systems, Inc., because it paid for Doe's one-night hotel stay to attend the October 15, 2024, sentencing hearing.  See Second PSR Addendum at 1.  The Second PSR Addendum also attaches what appears to be a piece of loose-leaf paper that calculates Doe's round-trip mileage, receipts for the hotel and car repair expenses, and a letter describing the nature and cost of two healing ceremonies in which Doe participated on May 19, 2020, and May 23, 2020.  See Residence Inn Receipt at 1, filed November 8, 2024 (Doc. 92-1)("Hotel Receipt"); Highway 64 Truck & Auto Salvage Receipt at 1 (dated October 23, 2024), filed November 8, 2024 (Doc. 92-1)("Highway 64 Receipt"); Treadworks Receipt at 1 (dated October 31, 2024), filed November 8, 2024 (Doc. 92-1)("Treadworks Receipt"); Letter from Grant Begay to Who ever [sic] it may concern at 1 (dated October 17, 2024), filed November 8, 2024 (Doc. 92-1)("Traditional Healing Ceremony Letter").

At the first restitution hearing, which is rescheduled for November 15, 2024, see Amended Notice as to Defendant Daryl Levi: Restitution Hearing, filed November 13, 2024 (Doc. 93), D. Levi's counsel raises, for the first time, the Restitution Objections, arguing that the Second PSR Addendum's restitution requests are not proper.  See First Restitution Hearing Minutes at 1-2.  Generally, D. Levi argues that ordering nearly $6,000.00 in restitution will undermine his rehabilitation, because he cannot make a meaningful dent in his restitution debt while he is incarcerated, and a continued financial burden will inhibit any meaningful reintegration when he is released.  See Draft Transcript of November 15, 2024, Hearing at 6:1-7:17 (taken November 15, 2024)(Zimmerman)("November 15, 2024, Tr.").[1]  D. Levi does not object to the $311.28 gas

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

mileage restitution request.  See November 15, 2024 Tr. at 5:21-24 (Court, Zimmerman). Although D. Levi notes that "somebody else, not the victim," paid for Doe's stay at the Residence Inn in Albuquerque, he also agrees that the hotel cost "might be appropriate [restitution] in this case".  November 15, 2024, Tr. at 5:17; 9:21-23 (Zimmerman).  Regarding the Highway 64 repairs -- i.e., repairs related to the car's transmission, suspension, and miscellaneous parts not including the tires -- D. Levi asserts that the Highway 64 Receipt is not specific enough to justify $2,289.75 in restitution, and that it is possible that the Levi brothers' conduct did not cause any of the alleged damage to car, because there are no pictures of the vehicle before the carjacking.  See November 15, 2024, Tr. at 11:7-11:9 (Zimmerman).  Regarding the traditional healing ceremony, D. Levi insists first that the Traditional Healing Ceremony Letter is not a "receipt that indicates payment." November 15, 2024, Tr. at 11:16 (Zimmerman).  Second, D. Levi challenges whether Grant Begay, who signed the Traditional Healing Ceremony Letter, is a "validly trained Native American Navajo healer."  November 15, 2024, Tr. at 13:23-24 (Zimmerman).

To challenge Begay's qualifications and credibility, D. Levi introduces an article about fake Navajo healers, Begay's criminal records -- including a judgment and sentence for concealing identity, and a document indicating that Doe's spouse once posted bond for Begay -- and an FBI report describing Doe's criminal history.  See Bill Donovan, Fake healers plague Navajo Nation, High Country News, October 13, 1997, at 1-3 (admitted as Defendant's Restitution Hearing Exhibit A on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Fake Navajo Healers Article"); Grant Begay Criminal & Traffic Records Search at 1-2 (admitted as Defendant's Restitution Hearing Exhibit B on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Begay Criminal Records Search"); New Mexico v. Begay, No. M-147-MR-2018-00815 (San Juan County Magistrate Court), Judgment & Sentence at 1, filed December 14, 2021 (admitted as

Defendant's Restitution Hearing Exhibit C on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Begay Judgment"); New Mexico v. Begay, No. M-147-MR-2018-00815, Bench Warrant at 1 (dated July 31, 2018)(admitted as Defendant's Restitution Hearing Exhibit D on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Begay Warrant"); New Mexico v. Begay, No. M-147-MR-2018-00815, Statement of Probable Cause at 1 (dated June 21, 2018), filed June 22, 2018 (admitted as Defendant's Restitution Hearing Exhibit E on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Begay Probable Cause Statement"); Case Information: State of New Mexico v. Grant J. Begay at 1 (admitted as Defendant's Restitution Hearing Exhibit F on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Begay Bond Information"); John Doe FBI 302 at 1-3 (dated May 20, 2020)(admitted as Defendant's Restitution Hearing Exhibit G on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Doe FBI Report"). Regarding the Treadworks repairs -- i.e., replacing tires and rims -- D. Levi asserts that there is no indication that Doe actually paid this bill or that the vehicle had rims of comparable quality before the carjacking. See November 15, 2024, Tr. at 20:24-21:8 (Zimmerman). To support this assertion, D. Levi introduces a photograph of Doe's vehicle that was taken before the carjacking, as well as photographs of the car's new rims, which, together, suggest that the car had lower quality rims before the carjacking. See Original Rims Photograph (dated May 17, 2020)(admitted as Defendant's Restitution Hearing Exhibit H on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("Original Rims Photograph"); New Rims Photographs at 1-2 (admitted as Defendant's Restitution Hearing Exhibit I on November 15, 2024), filed November 15, 2024 (Doc. 94-1)("New Rims Photographs"). After D. Levi finishes making his Restitution Objections, the United States asks for a two-week continuance to respond, which the Court grants. See November 15, 2024, Tr. at 24:16-18 (Probasco); id. at 26:17-18 (Court). The Court then schedules

a follow-up restitution hearing for December 2, 2024. See November 15, 2024, Tr. at 31:7-8 (Court).

On November 29, 2024, the USPO files a third PSR addendum. See Third Addendum to Presentence Investigation Report at 1-2, filed November 29, 2024 (Doc. 95)("Third PSR Addendum"). In the Third PSR Addendum, the USPO removes both car repair expenses -- High 64 and Treadworks -- from its restitution calculation, asserting:

> Regarding the quoted repairs for John Doe's vehicle, it should be noted, on this same date, defense counsel provided recorded conversations with a customer service representative from Threadworks [sic] and Highway 64 Truck & Auto Salvage, which indicated the vehicle was never physically seen by either auto repair shops for a quote. Therefore, the physical damage that existed prior to the instant offense and the physical damage as a result of the instant offense is unknown and was not determined by either auto repair shop. Based on this information, the United States Probation Office does not believe claims for the repairs can be appropriately accessed and are therefore not applicable, unless otherwise directed by the Court.

Third PSR Addendum at 1. Regarding the traditional healing costs, the USPO asserts that, although Begay is "not listed as a licensed member of Dinè Hataali Association, Inc.," Doe "found relief from the services provided to him during the healing ceremonies as result of the instant offense." Third PSR Addendum at 1. The USPO also includes a letter from Doe's spouse that describes how Doe's family paid Begay $1,250.00 for two services -- Traditional Protection Way and Beauty Way -- during "the time [Doe] was on oxygen, woke with nightmares." Letter from V.B. at 1 (undated), filed November 29, 2024 (Doc. 95-1)("Spouse Healing Letter"). Accordingly, the USPO stands by the $1,250.00 restitution request for Begay's healing services. See Third PSR Addendum at 1. The USPO also maintains its support for the gas mileage and hotel stay costs. See Third PSR Addendum at 1.

At the December 2, 2024, restitution hearing, the United States responds to D. Levi's Restitution Objections. See Second Restitution Hearing Minutes at 1-2. Regarding the healing

expenses, the United States asserts that, according to Doe's spouse, who is a member of the Navajo Nation, Begay's services were "related to the psychological well-being of" Doe, and were "conducted in accordance with the customs and traditions of the Navajo" Nation. See Draft Transcript of December 2, 2024, Hearing at 4:24-5:10 (taken December 2, 2024)(Probasco)("December 2, 2024, Tr."). Accordingly, the United States argues that it has carried its burden for obtaining restitution for Begay's services. See December, 2, 2024 Tr. at 4:4-5:14 (Probasco)(citing United States v. Harwood, 854 F. Supp. 2d 1035, 1063 (D.N.M. 2012)(Browning, J.)). Regarding the vehicle repairs, the United States disagrees with the Third PSR Addendum, arguing that restitution for both the Highway 64 and the Treadworks repairs is warranted, because the car was operable before the carjacking, and was inoperable afterwards. See December 2, 2024, Tr. at 5:15-7:9 (Probasco); Incident Report at 4 (indicating that the vehicle was towed from the scene after D. Levi abandoned it). To support its contention that D. Levi's "crime involved [essentially] driving this vehicle to death . . . before [he] and his brother fled from the vehicle," the United States proffers four photographs that show how damaged the vehicle was when D. Levi abandoned it, as well as the Incident Report, which describes the damage. December 2, 2024, Tr. at 8:2-5 (Probasco). See Vehicle Photographs 1-4; Incident Report at 3-4. In particular, the United States insists that Vehicle Photograph 4 illustrates damages to the vehicles' tires and rims. See December 2, 2024, Tr. at 8:6-8 (Probasco). Considering the United States' additional evidence, the USPO backtracks from the Third PSR Addendum and agrees with the United States that restitution requests for the car repairs, and for the tire and rim replacements, are warranted. See Second Restitution Hearing Minutes at 1.

    In response, D. Levi challenges whether the Vehicle Photographs and the Incident Report support the requested repairs, because the United States has not shown that D. Levi caused the

damage that Highway 64 and Treadworks repaired.  See December 2, 2024, Tr. at 12:19-15:19 (Zimmerman).  Specifically, D. Levi notes that: (i) the repairs occurred approximately four years after the carjacking; (ii) Highway 64 replaced the car's transmission, but the Incident Report says only that the rear taillights were broken, and that the right rear passenger tire was flat and off the rim; (iii) there is no information about any damage which the car had before the carjacking; and (iv) the Vehicle Photographs do not show that the car had rims of similar quality to those that Treadworks installed.  See December 2, 2024, Tr. at 12:19-15:19 (Zimmerman).  Regarding the healing services restitution request, D. Levi repeats his previous arguments: the United States has not shown that Begay is qualified to provide these services, and the credibility of Begay and Doe's spouse is questionable.  See December 2, 2024, at 18:15-20:1.  D. Levi also proffers email correspondence, where a Dinè Hataali Association representative confirms that Begay is not a licensed member of the Dinè Hataali Association.  See Email from Rick Abeyta to Daniel John, cc'ed Harry Zimmerman, re: Traditional Ceremony at 1-3 (dated November 26, 2024)(admitted as Defendant's Restitution Hearing Exhibit J on December 2, 2024), filed December 2, 2024 (Doc. 96-1)("Dinè Hataali Association Correspondence").  D. Levi concludes his response by asking the Court to "limit the restitution to the hotel and mileage." December 2, 2024, Tr. at 23:17-18 (Zimmerman).  After D. Levi finishes his response, the United States calls United States Probation Officer Daniella Martinez as a witness.  See December 2, 2024, Tr. at 23:24-5 (Probasco, Court).  Regarding Begay's healing services, Martinez testifies that Doe's spouse told her that Begay was selected as a healer, because "he was well known by the family and also he was one of the few that was providing these [services] during [the] COVID-19 pandemic." December 2, 2024, Tr. at 26:4-7 (Martinez).  Martinez also testifies that Doe's spouse told her that Begay's healing services were "consistent with the customs and practices that she is familiar with" in the Navajo

- 10 -

Nation.  December 2, 2024, Tr. at 26:22-23 (Martinez).  Regarding the repair costs, Martinez testifies that Doe's spouse told her that the vehicle has been inoperable since the carjacking.  See 28:3-29:2 (Probasco, Martinez).

## **LAW REGARDING RESTITUTION**

Courts do not have inherent power to order restitution, but may order restitution so only when a statute authorizes restitution.  See United States v. Harwood, 854 F. Supp. 2d 1035, 1051 (D.N.M. 2012)(Browning, J.)(citing United States v. Gordon, 480 F.3d at 1210).  The MVRA is a general act establishing a court's authority to order restitution.  See 3 C. Wright, A. Leipold, P. Henning, & S. Welling, Federal Practice & Procedure: Criminal § 546, at 241 (4th ed. 2011)("3 C. Wright").  In the United States Court of Appeals for the Tenth Circuit, restitution is not criminal punishment, but is based "in the field of compensation and remediation."  United States v. Serawop, 505 F.3d 1112, 1123 (10th Cir. 2007)(acknowledging that other Courts of Appeals treat criminal restitution as a criminal penalty).

In 1996, Congress enacted the MVRA, which made restitution mandatory in certain cases, "particularly crimes of violence and theft crimes with identifiable victims who 'suffered a physical injury or pecuniary loss.'"  United States v. Serawop, 505 F.3d at 1117 (quoting 18 U.S.C. § 3663A(c)(1)).  The MVRA applies:

> **(c)(1)** . . . in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense --
>
>     **(A)**    that is --
>
>         **(i)**    a crime of violence, as defined in section 16;
>
>         **(ii)**    an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;

>> **(iii)** an offense described in section 1365 (relating to tampering with consumer products); or
>
>> **(iv)** an offense under section 670 (relating to theft of medical products); and
>
> **(B)** in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.
>
> **(2)** In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement.

18 U.S.C. § 3663A(c)(1).

The MVRA envisions that, if the district court determines that difficulty in calculating restitution would complicate and prolong the sentencing process, the court may decline to order restitution; the MVRA provides:

> **(3)** This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) if the court finds, from facts on the record, that --
>
>> **(A)** the number of identifiable victims is so large as to make restitution impracticable; or
>
>> **(B)** determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C. § 3663A(c)(3). The term "victim" means

> a person directly and proximately harmed as a result of the commission of an offense as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 3663A(a)(2).

Section 3664 governs how courts are to issue and enforce restitution awards for the MVRA. See 18 U.S.C. § 3663A(d); 18 U.S.C. § 3556. Any dispute "as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," and the "burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). See United States v. Serawop, 505 F.3d at 1117 (stating that the United States bears the burden of proving amount of loss under the MVRA). The burden of "demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents" is on the defendant. 18 U.S.C. § 3664(e). "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." 18 U.S.C. § 3664(e).

Section 3664(a) requires that a court order the USPO to include in its presentence report "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). If the USPO cannot "reasonably ascertain" "the number or identity of victims," or it is "clearly impracticable" to meet the requirements for other reasons, the USPO must "inform the court." 18 U.S.C. § 3664(a). The United States should provide the USPO a listing of the restitution claims sixty days before sentencing, but § 3664(d)(5) allows a court to "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing," "if the victim's losses are not ascertainable by the date that is 10 days prior to sentencing." 18 U.S.C. § 3664(d)(5). "If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order." 18 U.S.C. § 3664(d)(5). A court may grant that order "only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief." 18 U.S.C. § 3664(d)(5).

"[B]efore awarding restitution, the district court must determine whether the crime of conviction was the proximate cause of the victim's loss." United States v. Zander, 794 F.3d 1220, 1233 (10th Cir. 2015).  "When a loss amount is disputed, the United States bears the burden of establishing its estimation of loss by a preponderance of the evidence." United States v. Sandoval, No. CR 22-1010 JB, 2023 WL 5835875, at *15 (D.N.M. Aug. 29, 2023)(Browning, J.).  The Tenth Circuit has, accordingly, held that a district court cannot include losses in its calculation under § 2B1.1 until the "Government first . . . prove[s] by a preponderance of the evidence that the conduct giving rise to those losses (1) was a part of Defendant's ongoing scheme . . . and (2) constituted a criminal offense under a federal or state statute." United States v. Kieffer, 681 F.3d 1143, 1168 (10th Cir. 2012).  Next, the United States must "prove the amount of loss (or a reasonable estimate thereof) associated with that conduct by a preponderance of the evidence." United States v. Kieffer, 681 F.3d at 1168 (citing United States v. Peterson, 312 F.3d 1300, 1302 (10th Cir. 2002)).

> We have repeatedly held that a restitution order which exceeds the amount of loss actually caused by the offense of conviction is an illegal sentence. See, e.g., United States v. Griffith, 584 F.3d 1004, 1019 (10th Cir. 2009); United States v. Smith, 156 F.3d 1046, 1057 (10th Cir. 1998); United States v. Wainwright, 938 F.2d 1096, 1098 (10th Cir. 1991).  We have also repeatedly held that the imposition of such an illegal sentence constitutes plain error, thus requiring reversal even when the defendant failed to preserve an objection below.  See, e.g., United States v. Gordon, 480 F.3d 1205, 1212 (10th Cir. 2007); Wainwright, 938 F.2d at 1098.  Moreover, the government bears the burden of proving the amount of loss, 18 U.S.C. § 3664(e), and a district court commits plain error if it orders restitution where the government has failed to present evidence that the victim's claimed losses were actually caused by the underlying criminal conduct.  United States v. Herndon, 982 F.2d 1411, 1422 (10th Cir. 1992).

United States v. Zander, 794 F.3d at 1233-34.  In guiding district courts on how to estimate restitution properly, the Tenth Circuit states:

> We have held "[a] restitution order must be specific in a dollar amount that is supported by evidence in the record" but that "the determination of an appropriate restitution is by nature an inexact science," United States v. Williams, 292 F.3d

681, 688 (10th Cir.2002)(internal quotation marks and citation omitted), so that absolute precision is not required.  See [United States v. Gallant, 537 F.3d 1202, 1252].  Thus, "[t]he court need only make a reasonable estimate of the loss, given the information available."  Id. (emphasis added).

United States v. James, 564 F.3d 1237, 1247-48 (10th Cir. 2009)(brackets outside of quotations added).

### ANALYSIS

The Court overrules in part and sustains in part D. Levi's Restitution Objections.  Regarding the healing services costs, the United States has not shown -- by a preponderance of evidence -- that Begay is a qualified healer.  Regarding the car repair costs, the United States has shown that D. Levi's criminal conduct proximately caused only the Highway 64 repairs and some of the Treadworks repairs.  Accordingly, the Court sustains in part and overrules in part D. Levi's Restitution Objections, such that, in addition to paying the gas mileage and hotel costs, he must pay for the Highway 64 repairs and twenty-five percent of the Treadworks repairs.

D. Levi does not object to the gas mileage or hotel costs.  See December 2, 2024, Tr. at 23:17-18 (Zimmerman).  The Court agrees that these costs are valid and substantiated such that D. Levi must pay them as restitution.  Accordingly, the Court focuses its analysis on the healing services and car repair costs.  At issue is not whether D. Levi's criminal conduct "actually caused" the Doe's psychological injuries, United States v. Zander, 794 F.3d at 1234, but rather whether "the United States has satisfied its burden of establishing that [Begay's services] qualif[y] for restitution under § 3663(b)(2)," United States v. Harwood, 854 F.Supp.2d at 1062-63.  18 U.S.C. § 3663(b)(2)(A) provides that, when a defendant causes bodily injury, a district court may order restitution "equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of

treatment." 18 U.S.C. § 3663(b)(2)(A). In United States v. Harwood, the Court concludes that, although 18 U.S.C. § 3663(b)(2)(A) may warrant restitution payments for traditional Native American healing ceremonies that provide psychological care, there must be record evidence that the healer is qualified to provide those services. See United States v. Harwood, 854 F. Supp. 2d at 1061-63. The Court reasons:

> The Court has no information from which to conclude that [the healer's services were in accordance with a method of healing recognized "by the law of the place of treatment." To make a factual finding that James' services qualify for restitution under § 3663(b)(2), the Court agrees that it would need to see [the healer's] resume to determine that he was qualified to provide the services rendered and information regarding the ceremonies performed -- what Native Americans consider their purpose, what the ceremonies are designed to do, and what the medicine man does -- to determine that the ceremonies fall within professional services "relating to physical, psychiatric, and psychological care" recognized within the Navajo Nation. 18 U.S.C. § 3663(b)(2). Without any information regarding the purpose of the ceremony, [the healer's] qualifications, or how such ceremonies fit within the Navajo tradition, the Court does not have a sound basis on which to base its findings in support of restitution. Accordingly, the Court will decline to exercise its discretion to award [the victim] restitution for [the healer's] services.

United States v. Harwood, 854 F. Supp. 2d at 1063. Although the United States has provided some information about the nature and purpose of the ceremonies that Begay conducted -- i.e., that Begay provided psychological care for Doe, and his services were in accordance with traditional Navajo methods -- the United States has not provided any information whether Begay is qualified to perform these services. See Traditional Healing Ceremony Letter at 1; Spouse Healing Letter at 1; December 2, 2024, Tr. at 4:4-5:10 (Probasco); id. at 24:6-27:8 (Probasco, Martinez). Without more information about Begay's qualifications, "the Court does not have a sound basis on which to base its findings in support of restitution," United States v. Harwood, 854 F. Supp. 2d at 1063, particularly given the credibility concerns that D. Levi raises. See Begay Criminal Records Search at 1-2; Begay Judgment at 1; Begay Bench Warrant at 1; Begay Probable Cause Statement at 1; Begay Bond Information at 1; Doe FBI Report at 1-3. On balance, two unsworn letters describing

generally the nature, purpose, and cost of Begay's services, and a United States Probation Officer's sworn testimony describing a conversation with Doe's spouse, where Doe's spouse opines that Begay's services were consistent with traditional practices, does not satisfy the United States' burden to support its restitution request.  See Traditional Healing Ceremony Letter at 1; Spouse Healing Letter at 1; December 2, 2024, Tr. at 24:6-27:8 (Probasco, Martinez); 18 18 U.S.C. 3663(b)(2)(A); 18 U.S.C. § 3664(e).  Accordingly, the Court declines to exercise its discretion to award Doe restitution for Begay's services.

Regarding the car repairs, the issue is inverted: the Court must determine not whether the car damage qualifies for restitution, but rather whether D. Levi's criminal conduct caused the damage that Highway 64 and Treadworks repaired.  "[T]he purpose of restitution 'is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.'" United States v. Serawop, 505 F.3d at 1124 (quoting United States v. Hudson, 483 F.3d 707, 710 (10th Cir. 2007)).  The Court concludes that the United States has proffered enough evidence to prove -- by a preponderance of the evidence -- that the Highway 64 repairs were appropriate to address whatever damage D. Levi inflicted on Doe's vehicle when he stole it.  See Incident Report at 3-4; Vehicle Photographs 1-4. Specifically, the Court notes that: (i) the Levi brothers drove Doe's car erratically, both on and off the road, during a high-speed car chase; (ii) officers observed that the car's hood was open when the Levi brothers stopped the vehicle, indicating that the Levi brothers' driving may have caused non-cosmetic damage to the car; and (iii) the car had to be towed after the carjacking.  See Incident Report at 3-4; Vehicle Photographs 1-4.  The Court need not audit the Highway 64 Receipt to conclude that D. Levi more likely than not caused significant damage that warranted those repairs, and thus, D. Levi must pay full restitution for them -- i.e., $2,289.75.  See United States v. James,

564 F.3d at 1248 (determining that district courts "need only make a reasonable estimate of the loss, given the information available")(quoting United States v. Gallant, 537 F.3d at 1252) (emphasis added in United States v. James).

Regarding the Treadworks repairs, the Court concludes that the United States has not shown that D. Levi is responsible for replacing all four of Doe's tires and rims. The new rims are different from the old rims. See Old Rims Photograph; New Rims Photographs at 1-2. Because only the rear passenger tire and rim were damaged during the carjacking, see Incident Report at 4; Vehicle Photograph 4; December 2, 2024, Tr. at 8:6-8 (Probasco), the Court concludes that the United States has not shown -- by a preponderance of the evidence -- that D. Levi damaged Doe's car enough to warrant replacing all four tires and rims. See United States v. Zander, 794 F.3d at 1233 ("[B]efore awarding restitution, the district court must determine whether the crime of conviction was the proximate cause of the victim's loss."). There is no evidence in the record that D. Levi damaged more than one tire and rim. See Incident Report at 4; Vehicle Photograph 4; December 2, 2024, Tr. at 8:6-8 (Probasco). Accordingly, the Court concludes that D. Levi must pay restitution only for twenty-five percent of the Treadworks repair costs -- i.e., $463.82. See United States v. James, 564 F.3d at 1248 (concluding that "absolute precision is not required," given "that 'the determination of an appropriate restitution is by nature an inexact science.'")(quoting United States v. Williams, 292 F.3d at 688).

**IT IS ORDERED** that: (i) the Defendant's Oral Objections to the Presentence Report, made on November 15, 2024, are sustained in part and overruled in part; (ii) the Defendant shall pay $198.88 in restitution to Utah Navajo Health Systems, Inc.; (iii) the Defendant shall pay $311.28 in restitution to John Doe for gas mileage for his trip to Albuquerque, New Mexico, to attend the October 15, 2024, sentencing hearing; (iv) the Defendant shall pay $2,289.75 in

restitution to Doe for the Highway 64 repairs; and (v) the Defendant shall pay $463.82 in restitution to Doe for the Treadworks repairs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
  United States Attorney
Mark A. Probasco
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Harry Zimmerman
Harry Ira Zimmerman Attorney At Law
Albuquerque, New Mexico

    *Attorney for Daryl Levi*